**The below described is SIGNED.**

**Dated: April 21, 2008**    _____
**WILLIAM T. THURMAN**
**U.S. Bankruptcy Judge**



_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re: | |
| **Chris D. Godfrey,** | Bankruptcy Number 07-24065 |
| Debtor. | (Chapter 13) |

## MEMORANDUM DECISION

The matters before the Court are the Debtor's request seeking confirmation of a chapter 13 plan and the chapter 13 Trustee's objection to the Debtor's claimed homestead exemption. The Court conducted a hearing on February 21, 2008 at which the chapter 13 Trustee appeared through counsel, Janci M. Lawes, and the Debtor appeared with counsel, Lewis P. Adams. The Court directed the parties to submit additional briefing on the issue of whether the Debtor was entitled to claim a homestead exemption on proceeds from the sale of his home. The Court has considered the supplemental briefing and arguments of counsel and the Debtor's proffered testimony and now issues this Memorandum Decision.

For the reasons set forth herein, the Court overrules the chapter 13 Trustee's objection to the Debtor's claimed homestead exemption.

**I.      JURISDICTION AND VENUE**

The Court has jurisdiction over this matter under 28 U.S.C. § 157(b)(2)(B) and (L). Venue is appropriate under 28 U.S.C. § 1408(1).

**II.     BACKGROUND**

The Debtor initially filed this case under chapter 7 on August 30, 2007. Two weeks prior to filing, the Debtor sold his condominium in Salt Lake City (the "Residence"). After paying off underlying secured claims and closing costs, the Debtor received approximately $11,200 from the sale of the Residence.

On the date of petition, the Debtor claimed an $11,200 homestead exemption on Schedule C and listed $11,200 as "Proceeds from Sale of Residence" in response to Item 19 on Schedule B. The Debtor's Statement of Financial Affairs also identified the sale of his Residence as a transfer made within two years of filing.

Between the time the Debtor sold his Residence and the date of petition, the Debtor voluntarily transferred proceeds derived from the sale to his father, a future landlord, his fiancé and others. Specifically, the Debtor purchased a wedding ring from his father for $4,600. The Debtor also transferred $1,700 to his future landlord as a deposit on an apartment and paid $500 as a pet deposit. Finally, the Debtor paid $850 on his fiance's Visa credit card and purchased $995.33 in euros which the Debtor and his new wife used on their honeymoon. None of the transfers set forth above were disclosed on the Debtor's initial Statement or Schedules.

On October 2, 2007, the chapter 7 Trustee conducted the scheduled meeting of creditors pursuant to § 341 of the Code.[1] At that time or shortly thereafter, the chapter 7 Trustee

---

[1] All statutory references herein are to the Bankruptcy Code unless stated otherwise.

ascertained that the Debtor had not disclosed the disposition of proceeds from the sale of his Residence.

On November 1, 2007, the chapter 7 Trustee filed an objection to the Debtor's claimed homestead exemption asserting that the Debtor had voluntarily transferred proceeds of the sale and concealed the transfers in violation of § 522(g). On November 11, 2007, the Debtor filed a motion to convert his case to one under chapter 13. The Debtor scheduled a hearing on this motion for December 10, 2007. The Debtor also simultaneously filed amended Schedules B and C, and an amended Statement of Financial Affairs.

The chapter 7 Trustee appeared through counsel at the December 10, 2007 hearing, but did not object to the Debtor's motion to convert. The Court conducted an independent inquiry regarding the Debtor's good faith in electing to convert,[2] and subsequently granted the Debtor's motion. Shortly thereafter, the Debtor filed a chapter 13 plan. On January 31, 2008, the chapter 13 Trustee objected to the Debtor's plan and filed an objection to the Debtor's claimed homestead exemption.

### III. ANALYSIS

As an initial position, the chapter 13 Trustee asserts that under Utah law "proceeds" must be kept in their original form and not used to purchase or pay for other items in order to qualify for the homestead exemption. Because the Debtor transferred a portion of the proceeds, the chapter 13 Trustee asserts that the exemption must fail. The Debtor asserts that the proceeds he received from the sale of his Residence are exempt under Utah law[3] regardless of their form or

---

[2] See Marrama v. Citizens Bank of Massachusetts, __ U.S. __, 127 S.Ct. 1105 (2007).

[3] The Utah Exemption Act applies in this case because Utah has opted out of the federal exemption scheme contained in 11 U.S.C. § 522(d).

character.[4]

The chapter 13 Trustee also asserts that the Debtor forfeited his exemption when he used the proceeds to purchase items not related to basic levels of shelter and support.[5] Finally, the chapter 13 Trustee asserts that the Debtor's homestead exemption should be denied in full or in part under bankruptcy law because the Debtor voluntarily transferred a portion of the proceeds and then concealed the transfers in his chapter 7 case in violation of § 522(g).

The Court begins with the premise that, as a general proposition, exemption laws must be liberally construed in favor of the claimant to effect their humanitarian purposes.[6] The determination of exemption issues in bankruptcy frequently requires and sometimes mandates application of state law.[7] The Court was unable to locate any case in which the Utah Supreme Court has determined that proceeds must be kept in their original form in order to qualify for the homestead exemption.[8] Thus, the Court's task is to predict how the Utah Supreme Court would

---

[4] Utah Code Ann. § 78-23-3(5)(b) provides: "The proceeds of any sale, to the amount of the exemption existing at the time of sale, is exempt from levy, execution, or other process for one year after the receipt of the proceeds by the person entitled to the exemption."

[5] The Court understands that Utah's homestead exemption is designed to protect the "dependent and helpless" and insure such persons shelter and support free from fear of a forced sale. See Sanders v. Cassity, 586 P.2d 423, 425 (Utah 1978). However, for purposes of this decision, the Court declines to specify the types of purchases or expenditures that constitute "shelter and support" under Utah law.

[6] See Carlson v. Diaz (In re Carlson), 303 B.R. 478, 482 (10th Cir. BAP 2004).

[7] See Butner v. United States, 440 U.S. 48, 55 (1979).

[8] In Giesy-Walker Co. v. Briggs, 162 P. 876, 879 (Utah 1916), the Utah Supreme Court stated: "The intention of the statute in giving the homestead claimant the right to claim the proceeds of sale of his homestead as exempt for a period of one year from the receipt thereof is to permit him to acquire another homestead and to pay therefor with such proceeds." It the opinion of this Court that Giesy-Walker does not amend Utah's Exemption Act to require homestead claimants to utilize sale proceeds solely for the purpose of acquiring another home.

interpret the statute under the circumstances of this case.[9] The Court is guided in its analysis by the Utah Constitution and Utah case law which promote the allowance of homestead exemptions.[10]

From the Court's perspective, it makes little sense to require a debtor to escrow, sequester, or place proceeds under a mattress for the one-year period permitted under Utah law in order to maintain the homestead exemption. If a debtor needs or wants to use those proceeds, nothing in Utah's exemption statute prohibits the debtor from doing so. Accordingly, the Court determines that Utah's homestead exemption necessarily includes disposition of sale proceeds for other purposes and extends to proceeds voluntarily transferred by a debtor.[11]

The chapter 13 Trustee also asserts that the Debtor's homestead exemption should be denied under § 522(g)[12] because the Debtor voluntarily transferred a portion of the proceeds and

---

[9] See Johnson v. Riddle, 305 F.3d 1107, 1118 (10th Cir. 2002) ("When the federal courts are called upon to interpret state law, the federal court must look to the rulings of the highest state court, and, if no such rulings exist, must endeavor to predict how that high court would rule.").

[10] See Article XXII, Section 1 of the Utah Constitution. See also P.I.E. Employees Federal Credit Union v. Bass, 759 P.2d 1144, 1151 (Utah 1988) (homestead exemption statutes must be construed and interpreted to give effect to the purposes and objects the framers of the constitution and the legislature had in mind); Panagopulos v. Manning, 69 P.2d 614, 618 (Utah 1937) (the object of the homestead exemption is to "assure to the unfortunate debtor. . . the shelter and influence of the home; and in its promotion courts may well employ the most liberal and humane rules of interpretation").

[11] The Court recognizes that the homestead statutes of some states explicitly exempt funds obtained from the voluntary sale of a homestead only if the proceeds are kept separate and apart and held for the sole purpose of acquiring another home within a certain period of time. The Utah Exemptions Act contains no such limiting language. Debtors in Utah may elect to reinvest their exempt funds in another home, but they are not statutorily obligated to do so.

[12] Section 522(g)(1) provides as follows: "Notwithstanding sections 550 and 551 of this title the debtor may exempt under subsection (b) of this section property that the trustee recovers under section 510(c)(2), 542, 543, 550, 551, or 553 of this title, to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if-
(1) (A) such transfer was not a voluntary transfer of such property by the debtor; and

5

then concealed the transfers in his chapter 7 case. The Court agrees that the Debtor's failure to list the transfers in his initial Statement and Schedules was inadequate and led unnecessarily to questions about his honesty and good faith. However, the Court finds that sufficient disclosure of the existence of sale proceeds was made when the Debtor claimed an $11,200 homestead exemption on Schedule C, listed "Proceeds from Sale of Residence" on Schedule B, and identified the sale of his Residence as a transfer made within two years of filing on his Statement of Financial Affairs. Moreover, the Debtor subsequently amended his schedules to reflect where he spent and otherwise disposed of his homestead proceeds.[13] This is contrasted against other situations where the disclosures have been completely missing resulting in a denial of an exemption where the truth of the claimed asset was not disclosed.[14]

In addition, no evidence of fraudulent intent was presented to the Court. It appears to the Court that the Debtor sold his condominium in an effort to raise some cash to get married. The Debtor took the sale proceeds, bought a wedding ring, and went on a honeymoon. Then, with the balance of the sale proceeds, the Debtor made deposits on residential rental property. Under the facts of this case, the Court cannot find that the Debtor made the transfers to hinder, delay or defraud creditors.[15]

---

(B) the debtor did not conceal such property; . . .

[13] Rule 1009(a) of the Bankruptcy Rules allows a debtor to amend schedules "as a matter of course" at any time before the case is closed.

[14] The Tenth Circuit BAP recently determined that exemptions may be curtailed or denied where there has been lack of full disclosure. See Scrivner v. Mashburn (In re Scrivner), 370 B.R. 346 (10th Cir. BAP 2007). Other courts have reached similar conclusions. See Cogliano v. Anderson (In re Cogliano), 355 B.R. 792 (9th Cir. BAP 2006); In re Mazon, 368 B.R. 906 (Bankr. M.D. Fla. 2007).

[15] See Tavenner v. Smoot, 257 F.3d 401 (4th Cir. 2001), cert. denied, 534 U.S. 1116 (2002). Tavenner involved an adversary proceeding brought by the trustee to avoid a transfer under § 548. The Court finds its analysis helpful on the question of intent of the Debtor in making the transfers. The

The Court also notes that the chapter 7 Trustee elected not to challenge the Debtor's conversion from chapter 7 to chapter 13. Had the chapter 7 Trustee objected to conversion and presented evidence of bad faith, such as fraudulent intent on the part of the Debtor in making the transfers, the Court may not have granted the Debtor's motion to convert under the parameters of Marrama.[16] The issue of not properly scheduling the transfers could possibly be a badge of lack of good faith. However, this issue was not probed at the conversion hearing except by the Court as indicated above. As a result, the Court has impliedly made a finding of good faith in the Debtor's conversion from chapter 7 to chapter 13, and the Court determines that it would be incongruent to disallow the exemption on the same evidence.

## IV.   CONCLUSION

Based on the foregoing, the Court determines that proceeds from the sale of a home need not be retained in their original form to qualify for the homestead exemption and sale proceeds may be disbursed for other purposes without jeopardizing the exemption. The Court further determines that the Debtor's transfers were not concealed within the ambit of § 522(g). The Debtor's homestead exemption is allowed and the disclosures, although terse, are not sufficient when compared to what was disclosed to constitute a lack of good faith under § 1325 (b)(3) and are not a bar to confirmation.

A separate order accompanies this Memorandum Decision.

---

ultimate determination in the present case may require a trustee to commence adversary proceedings against the transferees which would require a finding of fraudulent intent on the part of the Debtor.

[16]See Marrama v. Citizens Bank of Massachusetts, __ U.S. __, 127 S.Ct. 1105 (2007).



Service of the foregoing **MEMORANDUM DECISION** will be effected through the Bankruptcy Noticing Center to each party listed below.

Lewis P. Adams
495 East 4500 South, Suite 102
Salt Lake City, UT 84107
    *Attorney for Debtor(s)*

Chris D. Godfrey

8

4254 South 1300 East  
Salt Lake City, UT 84124  
        *Debtor(s)*

Kevin R. Anderson  
Janci M. Lawes  
405 South Main Street, Suite 600  
Salt Lake City, UT 84111  
        *Chapter 13 Trustee*

ORDER SIGNED